**So Ordered.**



_Frederick P. Corbit_
**Frederick P. Corbit
Bankruptcy Judge**

**Dated: April 2nd, 2014**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| In re: | Case No. 13-03913-FPC7 |
|---|---|
| MERVIN CARRINGTON, | MEMORANDUM DECISION ON REAFFIRMATION AGREEMENT |
| Debtor. | |

On October 2, 2013, Mr. Mervin Carrington filed a chapter 7 petition because he did not have the ability to pay his unsecured debts that totaled over $100,000. Mr. Carrington's bankruptcy schedules showed that his monthly net income of $1,176 was six dollars short of covering his monthly living expenses.

In spite of Mr. Carrington's need for a discharge, at his first meeting of creditors he signed an agreement to reaffirm an obligation to Les Schwab Tire Centers of Washington, Inc. ("Les Schwab"). The reaffirmation agreement was filed in this case by Les Schwab on December 2, 2013, and was for a $531 debt that is purportedly subject to a July 11, 2013 purchase money security interest for two tires

and four wheels installed on Mr. Carrington's motor vehicle.[1] Mr. Carrington's discharge was granted on February 18, 2014, and two days later the Clerk of Court entered a final decree.

After the decree, Mr. Carrington sent a letter asking if his reaffirmation agreement with Les Schwab had been approved by the court. Mr. Carrington's letter, which is reproduced as written, reads:

> Mervin L Carrington
> [Address Redacted]
>
> **Case # 13-03913-FPC7**
>
> 03-05-2014
>
> U.S. Bankruptcy Court
> P.O. Box 2164
> Spokane, Wa. 99210-2164
>
> I'm writing as I, have a problem with a creditor that is on my bankruptcy.
> The Creditor has been harassing me all through my case. And now its over
> Is still demanding payment or they are going to sue me in court.
> My Bankruptcy was final as of 2-18-2104.
>
> The Creditor is Les Schwab Tire Center Acct # [Redacted]
> What I need to find out was there a agreement for repayment filled with the
> Court by them. And if so way such agreement Approved or Disapproved as I
> have never received any such notice. They were at the Creditors meeting
> back in Nov-2013.
>
> They had a agreement there but it needed to be Approved or Disapproved
> By the Bankruptcy Judge to be valid And I was advised by Trustee if they
> file the paper with the Court there would be another hearing on it which
> never happen. So I was figured it was Discharged on 2-18-2014 I just need
> to know if such paper work was filed and what the Out come was. And if
> such agreement was approve I need a copy of it
> Which was signed by the bankruptcy judge. I didn't have a lawyer for my
> case. Les Schwab have been trying to get me to pay every month during the

---
[1] Neither Mr. Carrington nor Les Schwab presented a copy of the alleged security agreement to the court.

> time they were not to contact me under chapter 7 bankruptcy protection.
> They never stop sending bills demanding payment ASAP. Now they are
> threaten to sue me . I need prove if or not if such agreement was file .
> And if Approved Or Not.
>
> Thank You for your help in this matter.
>
> Mervin L. Carrington
> *Mervin L Carrington*

Upon receipt of the letter, the Clerk of Court entered an order vacating the final decree and scheduled a hearing on the reaffirmation agreement. At the hearing, which occurred on March 24, 2014, Mr. Carrington testified that he could not afford to make any payments to Les Schwab and that the reaffirmation documents were prepared, without input from him, by an employee of Les Schwab.

## Courts Review Several Factors before Approving the Reaffirmation of Debts.

The goal of the bankruptcy discharge is to save debtors from drowning in debt. Undermining that goal was a long history of coercive and deceptive actions by creditors that caused many debtors to enter into imprudent agreements to reaffirm dischargeable debts.[2] As a result, the Bankruptcy Code now protects debtors by requiring their attorney, or a bankruptcy judge if the debtor is not represented by an

---

[2] *See* H.R. REP. NO. 95-595 at 162-163; Report of the Bankruptcy Commission, H.R. Doc. 137, 93d Cong., 1st Sess., Part I, 177.

attorney, to approve of the reaffirmation agreement before it is enforceable.[3] Because Mr. Carrington was not represented by an attorney, the duty to review his reaffirmation agreement falls on the court and, in turn, the court is precluded by the Bankruptcy Code from approving the agreement if it imposes an "undue hardship on the debtor" or is not "in the best interest of the debtor."[4]

There are sound financial reasons for the approval of some reaffirmation agreements. For example, it may be prudent for a debtor to reaffirm a debt as part of an agreement to cure defaults on a $5,000 loan secured by an automobile worth $10,000 that is needed by the debtor to get to work.[5] However, when it comes to undersecured debts or debts secured only by accessions to motor vehicles, such as the tires and wheels that Les Schwab sold to Mr. Carrington, reaffirmation may not be in a debtor's best interest.

There are several reasons why an attorney or a bankruptcy judge should be careful before approving a debtor's reaffirmation of a debt.[6] This is especially true

---

[3] 11 U.S.C. § 524(c). In a memorandum opinion circulated and unanimously approved by the bankruptcy bench of the Northern District of Texas, Judge Stacey G.C. Jernigan elucidates the relative roles of attorney and judge in the reaffirmation process – noting that the court relies on the disclosures of the attorney to decide whether it has discretion to even evaluate a potential reaffirmation. *In re Grisham*, 436 B.R. 896 (Bankr. N.D. Tex. 2010).

[4] 11 U.S.C. § 524(c)(6)(A).

[5] *See* 3 Norton Bankr. L. & Prac. 3d § 58:7.

[6] *See In re Kamps*, 217 B.R. 836, 847 (Bankr. C.D. Cal. 1998) (listing several common factors for a court to consider before approving a reaffirmation agreement including the adequacy of disclosures made by the creditor, validity of any underlying security interest, and present value of

when the collateral for the debt is limited to accessions to an automobile.[7] For example: the collateral, such as used tires, can in some cases be replaced for an amount that is less than the secured debt; a merchant's secured claim in accessions to a motor vehicle is junior to a secured claim in the vehicle as a whole and therefore may not be enforceable;[8] and it may be cost prohibitive to repossess accessions if doing so without a court order would cause a breach of peace.[9] Additionally, and controlling in this case, courts should not approve of reaffirmation agreements where

---

the collateral); 4-524 Collier on Bankruptcy ¶ 524.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (noting that "courts have looked to a number of factors to decide whether a reaffirmation agreement is in the best interest of the debtor" including whether the debtor can afford the payments, if the debtor is attempting to protect a cosigner, and whether the purpose of a reaffirmation could be better accomplished by some other means).

[7] The Uniform Commercial Code ("UCC") in section 9-102(a)(1) defines "accession" as "goods that are physically united with other goods in such a manner that the identity of the original goods is not lost." Washington has adopted 9-102 and the other UCC provisions referenced in this Memorandum. *See* WASH. REV. CODE § 62A.9A-102(a)(1) (2013).

[8] The UCC provides in section 9-335(d) that "[a] security interest in an accession is subordinate to a security interest in the whole which is perfected by compliance with the requirements of a certificate-of-title statute. . . ." *See* WASH. REV. CODE § 62A.9A-335(d). UCC section 9-335(d) is discussed in more detail in this court's contemporaneously issued memorandum decision in a separate case. *See In re Brady*, No. 14-00040-FPC7 (Bankr. E.D. Wash.).

[9] UCC section 9-609(b)(2) provides that a secured party may proceed to repossess collateral without judicial process only if it can do so "without breach of the peace." *See* WASH. REV. CODE § 62A.9A-609(b)(2). If repossession without a court order would result in a breach of peace, a prudent business may abandon collateral that is worth less than the fees and costs associated with judicial process.

the creditor has engaged in gamesmanship in order to make it appear that the agreement will not create an undue hardship on the debtor.[10]

At the time Mr. Carrington filed his bankruptcy petition, his Schedule I reflected net monthly income of $1,176 and his Schedule J reflected monthly expenses totaling $1,182. In contrast to the schedules prepared by Mr. Carrington, Les Schwab prepared a revised monthly budget that reduced Mr. Carrington's expenses by $50 to make it appear that Mr. Carrington had the ability to meet his basic needs and pay up to $44 to Les Schwab.[11] The court believes that the budget in Mr. Carrington's schedules is more trustworthy than the budget included in the reaffirmation agreement that Mr. Carrington had no hand in preparing.

**Mr. Carrington's Reaffirmation Agreement Is Not Approved.**

Because Mr. Carrington's bankruptcy schedules and testimony demonstrate that he does not have the ability to make payments to Les Schwab and at the same time cover his necessary living expenses, it would present an undue hardship on

---

[10] *See, e.g.*, *In re Grisham*, 436 B.R. 896, 904 (Bankr. N.D. Tex. 2010) ("[T]he court may set the reaffirmation agreement for hearing when the math is positive **now**, but was negative at the time the debtor filed his Schedules I and J (often, miraculously, the debtor has much more income and far fewer expenses, say 80 days after he filed his case and filed his Schedules I and J . . .")(emphasis in original).

[11] 11 U.S.C. § 524(m)(1) presumes an "undue hardship" in a reaffirmation agreement "if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt."

Mr. Carrington if he were obligated to make the payments provided for in the reaffirmation agreement. Therefore, the court will not approve the reaffirmation agreement.

///END OF MEMORANDUM DECISION///